Mr. Justice James
delivered the opinion of the Court:
This cause comes here on appeal from an order of the Special Term in equity refusing to set aside its former order confirming a sale made by one James B. Green, as trustee. The merits of the question involved will appear in the following statement of facts:
A certain Mary E. Macpherson, of Baltimore, died in the year 1873, leaving her last will and testament, by which, after making several unimportant bequests, she devised as follows: “Unto my nephews, Chapman Maupin and Robert W. Maupin, of the State of Virginia, in fee simple, my lot, with the house and other improvements thereon, on F' street between Fifth and Sixth streets, * * * in the *43 city of Washington, to be held by them and the survivors of them, and by such person or persons as may be appointed to execute the trusts declared by this my last will, by the last will and testament of such survivor, or by other instrument of writing executed for that purpose by such survivor; but in trust, nevertheless, to manage and control the same, and to take the rents, profits, and income thence arising and to pay the one-half of the net amount received * * * to my daughter, Susan W. Edwards, for and during her natural life.”
And after the death of the said daughter, the trustees were to pay the said moiety of rents to the separate use of the granddaughter of testatrix, Susan W. Edw'ards; and, after the deatli of the latter, were to distribute the whole of the said moiety according to certain contingencies.
As to the remaining moiety of rents, the will directed that they should be paid to the sole and separate use of the granddaughter, Alice Tyler, gave to Alice Tyler power to appoint said moiety, and then provided where it should go on certain contingencies. It then provided as follows:
“And I do hereby confer upon my said trustees full power and authority, at his or their discretion, from time to time, to sell by public or private sale * * * all or any part of the trust property in this will devised and bequeathed to my said trustees, and to receive, grant acquittances for, and re-in vest the proceeds of such sales,” &c.
It appears that one of the trustees, Robert W. Maupin, . died in 1876; that the other, Chapman Maupin, expressed a desire to resign his functions, and that thereupon Susan W. Edwards, widow, and Alice Tyler, by her next friend, filed a petition in this court stating these facts, praying an account by the surviving trustee, and the appointment of a new trustéb. Chapman Maupin, in his answer, admitted these allegations, offered to account, and expressed his desire to resign his trust.
On March 29th, 1882, the following decree was made:
*44 “That the fee-simple estate in lands located in the city of Washington, D. C., deviséd by the last will and testament of Mary E. Macpherson, deceased, to Chapman Maupin and Robert W. Maupin, upon certain trusts declared in said will, be, and the same is hereby, taken out of the said Chapman Maupin, the survivor of the said co-trustees, and vested in James B. Green, of the city of Baltimore, together with all the rights, powers, duties, and obligations incident thereto under the said last will and testament. And it is further adjudged, ordered, and decreed: That all the trusts vested by the said will in the said co-trustees, and surviving to the said Chapman' Maupin, be, and they are hereby, abrogated and repealed as to him and conferred upon the said James B. Green, subject to the terms of the said last will and testament, and that the retiring trustee pay over and deliver to his successor, hereby appointed, all money, books, papers, and other property belonging or relating to the said trust estate.
“And it is further adjudged, ordered, and decreed: That the said James B. Green, trustee, as herein provided, shall file with this court, before any sale of the said real estate under the powers contained in the said will, a bond in the sum of $8,000, with a surety or sureties to be approved by this court, for the faithful performance of his duty in connection with the said sale. And that he shall at all times be subject to the control and order of this court in matters touching the trust. And that the costs of this proceeding are payable out of the principal of the trust estate.
About eighteen months after his appointment a correspondence began between the substituted trustee and the devisees of the rents, in which the trustee urged the propriety of selling the property and re-investing the proceeds in loans, while the devisees objected to the proposed transactions. In November, 1883, he submitted to them an offer of $5,500; in April, 1884, he expressed surprise and annoyance that they should disapprove of a sale at $6,500, and *45 endeavored to convince them that that was “ a capital offer;” in October, 1886, he wrote several letters from Los Angeles, California, whither he had removed his residence, urging the acceptance of $8,500. In this correspondence Mrs. Edwards had stated her opinion that the property was worth $12,000, an estimate which the trustee, judging from the more advantageous point of a very distant residence, characterized as fabulous. He expressed at first only solicitude that the devisees of the rents should, by means of a reinvestment at 6 per cent, enjoy a larger income, and that the remaindermen should avoid loss by deterioration of the house. But when Mrs. Edwards, in answer to his arguments, intimated a wish that he should relieve himself of the anxieties of the trust, he stated, in a letter dated December 2, 1886, “ frankly and calmly,” as he assures her, the terms on which he would retire. In order to do justice to this offer we give his own words: “ If the property be worth what you and your friends value it_ at ($12,000), my commissions at 5 per cent, on its sale will be $600; but estimating on the sale I recently made, at $8,500, as the true basis, $425 will be my compensation ; nearly $2,000 in rent and collection from Chapman Maupin have passed through my hands since I took charge, and the commissions at 5 per cent, on this amount would be $100; add this to the $425, and you have the amount I am called upon to relinquish. If you send me a draft on New York for $525 I will petition the court to let me resign, release my securities, and appoint Mr. H. H. Raleigh, my successor.” The trustee’s arithmetic appears to be trustworthy. In a previous letter to Mr. Raleigh, the gentleman just referred to, he had said: “As to the trusteeship, it has never been the source of any profit to me, but the property in my hands has been kept up and has increased handsomely in value (he forbears to add that this increase had enured to the benefit of the estate by the defeat of his propositions to sell), and, to be frank with you, I would rather remain trustee until the *46 closing up of the estate, when I will become entitled to commissions as compensation for my services; as a business man, you will readily grasp this proposition.” In the light of what followed later we think it may, in the suggestive language of the trustee, be grasped.
We note, especially, the fact that his solicitude for the rescue of the estate from the dilapidation of a house of little value was coupled with another solicitude of a somewhat antagonistic aspect, and that he had indicated, in his letter to one of the devisees of the small rents, a readiness to abandon the devisees to their own folly, if they would pay him out of their poor rents the highest commissions to which he could be entitled by having rendered the most beneficial service.
The next step appears in a report filed by the trustee in the Special Term in Equity on the 7th of March, 1888, in which he stated .that on the 31st of January of the same year, he had, through the agency of J. H. Gray & Co., sold the estate to one A. M. Kennedy for $11,000 cash, to be paid on ratification of the sale. In this report he asked for ratification of the sale, while expressing the belief that he had ample power under the will independently of the court. The sale was confirmed on the same day without notice to the devisees of the rents, or to other parties interested in the estate. At the same term of the Equity Court, Mrs. Susan B. Edwards and Alice Tyler filed their petition, praying that the order confirming the sale be set aside as improvidently made; that Green be removed from his trust, and that some responsible person be substituted. On this petition Green, the trustee, and Kennedy, the purchaser, were ruled to show cause why the order of ratification should not be set aside. At a later day of the same term Green was ordered to pay into the registry of the court all the fund in his hands as trustee. The cause was heard upon the petition and the answer of Green, and on May 2, 1888, the prayer of the petitioners was denied. It is from this order that the appeal is now taken.
*47 Green, in showing cause, states that the surviving testamentary trustee, having power to appoint a successor with all his own powers, had in fact exercised that power by the deed which he executed to the substituted trustee after the decree appointing him. He claims, therefore, to have been invésted with power to sell both by the decree of substitution and by Maupin’s appointment. The effect of both of these is consequently to be considered.
We hold it to be clear, first, that the will itself did not give the power to sell and re-invest to any person besides the original trustees, and the person whom the surviving trustee was to appoint. Whether that power was intended .to vest even in the latter we need not decide. It is enough that the will made no provision for vesting such power in the person whom a court of equity might appoint in the exercise of its ordinary jurisdiction to prevent the failure of a trust by filling a vacancy. A testator might direct that the same discretionary power which he had given to trustees designated by himself should belong to the trustee appointed by the court in case of a vacancy, but if he omits to do so a discretionary power will be construed to be personal. It follows that this power of sale and reinvestment did not vest in the substituted trustee as an incident to the trust in which he was substituted. If it belonged anywhere it belonged to the court and was to be exercised under its control. It remains to be considered whether the decree in this case intended to vest its power in the substituted trustee, and that he should sell and reinvest in the same manner as the original trustee. We think it is plain that it does not admit of any such construction. Whatever may be suggested by its language in devesting the title and powers of the surviving testamentary trustee 'and vesting them in Green, it is to be observed that the latter was distinctly made the court’s trustee, and that he was, by an express provision of the decree, to be at all times “subject to the control and order of this court in *48 matters touching the trust.” It is impossible to state more plainly that he had no discretionary power. If he was at all times tp be subject to the order of the court, he must be subject to its order as to making any sale and reinvestment, and when any sale should be made it must be a sale by order of the court. It may be added that, even if the will had contemplated that a substituted trustee might exercise the discretionary power to sell he could be required by the court, when once the cause came into its hands, to act under its control.
The remaining proposition, namely, that the deed executed by Maupin to the substituted trustee was an appointment under the will, and gave the same power of sale which he had possessed, hardly needs consideration. Maupin was himself a party to the petition asking for a substitution. He was at once under the control of the court, and could do nothing to enlarge powers which the court chose to limit.
Moreover, every power which he himself had possessed under the will, including this very power of appointment', had been devested by the decree when he attempted to act. If he could no longer appoint, Green could not receive any power from him.
The validity of this sale, then, depends wholly upon the propriety of the ratification by the court, and its refusal to set aside that order. And as to this, it is to be remembered that parties interested in the estate are absolutely entitled to- a hearing before their interests are disposed of by the court. In this case the sale was made and confirmed without notice to them, and without giving them a day^ Whether the price received was a fair price, and whether it was desirable, in view of the rise in Values of property in that vicinity, that a sale should never be made at all, are-questions of doubt; but whether the trustee has acted prop-' erly seems to be a question of no doubt at all. We are of opinion, in view of all the circumstances, that this sale should not be confirmed, that the order refusing to set aside *49 must be reversed, that Green should be required to pay into the registry what he has retained as commissions, and that he should be relieved from his trust.
Note. — After the announcement of the foregoing decision, Alexander Kennedy, purchaser at the trustee’s sale, filed a petition for rehearing. Upon this petition
Mr. Justice Merrick
delivered the opinion of the Court:
We have had under consideration the petition of Alexander Kennedy, who was a purchaser of the property in the case of Edwards vs. Maupin, in which the -court announced an opinion on Monday last, deciding to set aside the proceedings of the court below ratifying the sale, and discharge the trustee for misconduct. This petition now seeks to have that decree or proposed decree modified so far as to save the petitioners’ alleged rights as purchaser of the property in question, and he bases his petition upon the suggestion that inasmuch as the order appealed from was an application for a rehearing of an order passed at the same term, it was purely a discretionary order, and therefore unappealable.
There .is a considerable misapprehension as to the extent of the right of appeal from' the Special to the General Term, and this grows out of the fact that the decisions of the Supreme Court of the United States as to what is and what is not appealable from the circuit courts to the Supreme Court of the United States are relied upon as applicable to this court. '
But the rule which applies to this court in regard to questions of appeal is entirely different from that applying to the Supreme Court and the circuit c'ourts of the United States. When the question of the right of a party to an appeal is raised here it is not sufficient that the appeal is from a discretionary order which would .not be the subject of appeal from a circuit court to the Supreme Court of the United States. The word “ discretion ” means in the chancery court, a, very different thing from a discretion' exercised *50 by the court in regard to those interlocutory orders which are made in the progress of a cause, such as an order granting time, an order opening depositions and taking further depositions, an order setting down a cause for hearing or granting a continuance, and things of that kind — all these are in the proper sense discretionary. But there are other orders which, though they may be classed as discretionary, are not for that reason unappealable if substantial rights have been involved. The tendency of the courts of to-day is to give#the right of review by appellate tribunals whenever the substantial rights of .the parties are involved. It is apparent that in this ease the most substantial rights of the parties were involved. Here is an application at the same term at which an order is passed ratifying a sale, which, being passed and not appealed from or corrected in any other mode,-would definitely settle the rights of the parties and deprive the petitioners absolutely and forever of a title to real estate, by the conversion of the realty into a sum of money; whether the full or an inadequate price for the value of the land need not be considered.
In that state of case, according to chancery practice there would be two courses open to the party aggrieved. To apply to vacate that order upon a motion in the nature of a motion for a rehearing, based either upon error appearing upon the face of the proceedings or upon some newly discovered matter for the first time brought to the attention of the court. He would also have the right to allow the term to pass and file a bill of review for the same reasons. The party in this case chose, and very properly chose, the simpler mode of applying to the court to vacate the order. The application was substantially based upon the ground of fraud, and for error apparent upon the face of the order, and also for newly discovered evidence which had not been' previously brought to the attention of the court. The court refused to grant the motion and an appeal was taken. We entertained the appeal and announced on Monday last the *51 conclusion to which we had arrived, and the extent of relief which we determined to grant.
The suggestion now is want of jurisdiction.
We have considered the petition very carefully, and the court has not been persuaded to change its opinion in any respect, and the petition, therefore, will be dismissed.
It may be added that there is no merit whatever in this application to the court at this late date and for the first time, because upon the face of the petition it appears that the petitioner was notified of the proceedings in special term and knew of the progress of the cause up to the time of the appeal; but he took the position that he would not be prejudiced ; that his rights would not be involved in the proceedings. Every man, when he is notified of the facts, is charged with knowledge of the legal consequences of those facts, and if the petitioner erred in his judgment as to what conclusions this court might arrive at upon consideration and argument as to the rights of the parties in this case, he cannot say that he has been taken by surprise or been aggrieved, for he has had his day not only in the Special Term, but also might have had his day upon final argument in this court. He is, therefore, without any claim whatever to have the matter considered. This conclusion has been reached by us only after very careful deliberation.
The petition is accordingly dismissed.